UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH BARONI,<br><br>    Plaintiff,<br><br> vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. CV 10-5169 RNB<br><br>ORDER AFFIRMING DECISION OF COMMISSIONER |

  The Court now rules as follows with respect to the four disputed issues listed in the Joint Stipulation.[1]

//
//
//

---

[1] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

**A. Reversal is not warranted based on the alleged failure of the Administrative Law Judge ("ALJ") to make a proper adverse credibility determination (Disputed Issue No. 4).**

Plaintiff contends that the ALJ failed to make a proper adverse credibility determination with respect to his subjective symptom testimony. However, after setting forth the governing legal standard, the only reasons provided by the ALJ in support of her adverse credibility determination with which plaintiff specifically takes issue are (a) the ALJ's reliance on the May 18, 2000 opinion of one of plaintiff's treating physicians, Dr. Gaal, that plaintiff was going to different clinics at Kaiser because she would not assess him as disabled, and (b) the ALJ's reliance on evidence in the record of plaintiff's daily activities. (See Jt Stip at 30-34.)

The Court notes that the ALJ did not mischaracterize the opinion of Dr. Gaal to which she was referring. (See AR 847.) Plaintiff appears to be implicitly contending that the ALJ should not have credited any of the opinion(s) rendered by Dr. Gaal in her comprehensive May 18, 2000 report because "at the previous treatment session Dr. Gaal had found Mr. Baroni TTD [i.e., totally temporarily disabled] and at the following treatment session after her May 18, 2000 report she again found Mr. Baroni TTD," citing AR 839 and 859. (See Jt Stip at 32.) However, the Court notes that AR 838-39 purports to be a Supplemental Report stemming from an April 13, 2000 examination by an Emergency Room physician, Dr. Shofti (not Dr. Gaal), finding plaintiff TTD only for that day and the following day. While it appears from AR 859 that Dr. Gaal may have signed that second page of a Supplemental Report stemming from a May 24, 2000 examination, it is not clear that Dr. Gaal is the doctor who actually examined plaintiff on that date. In this regard, the Court notes that another doctor's name appears next to the signature line, and that the corresponding treatment note for that date appears to have been made by still another doctor. (See AR 854.)

Further, under Ninth Circuit jurisprudence, the ALJ could properly rely on the

evidence of record of plaintiff's daily activities in support of her adverse credibility determination. See, e.g., Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (ALJ may properly rely on inconsistencies either in claimant's testimony or between claimant's testimony and claimant's conduct, claimant's daily activities, and claimant's work record); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on contradictions between claimant's reported limitations and claimant's daily activities); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1991) (ability to take care of personal needs, prepare easy meals, do light housework and shop for some groceries "may be seen as inconsistent with the presence of a condition which would preclude all work activity").

Finally, the ALJ also provided other reasons in support of her adverse credibility determination, including: plaintiff's subjective complaints and alleged limitations were out of proportion to the objective clinical findings and observed functional restrictions; plaintiff's admission that his pain from his lumbar disc disease was well treated with vicodin; plaintiff's failure to complain of mental problems and lack of ongoing treatment for mental problems for any 12-month period; plaintiff's ability to understand and respond to questions at the hearing; the lack of corroboration in the record for plaintiff's allegation of extreme medication side effects; and the fact that plaintiff's doctors had not found that plaintiff required ongoing aggressive medical intervention for his symptoms. (See AR 30-31.) These were all reasons on which the ALJ properly could rely in support of her adverse credibility determination. See, e.g., Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (ALJ may properly rely on failure to seek treatment); Morgan, 169 F.3d at 600 (ALJ may properly consider conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment had been prescribed); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on lack of objective evidence to support claimant's subjective

complaints, inconsistencies in claimant's testimony, and effectiveness of medication); Drouin v. Sullivan, 966 F.2d 1255, 1259 (9th Cir. 1992) (ALJ may properly rely on his own observations at the administrative hearing as one factor in support of an adverse credibility determination); Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989) (ALJ may properly rely on the unexplained or inadequately explained failure to seek treatment).

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). Where the ALJ finds a claimant's subjective complaints not credible, the ALJ must make specific findings which support the conclusion. See Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); Varney v. Secretary, 846 F.2d 581, 584 (9th Cir. 1988) (citations omitted). As the Ninth Circuit observed in Fair, 885 F.2d at 604, "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." The Court finds that the reasons given by the ALJ here were sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit plaintiff's subjective symptom testimony.

**B.  Reversal is not warranted based on the ALJ's alleged failure to properly consider the opinions of plaintiff's treating physicians (Disputed Issue No. 1).**

It appears from plaintiff's portion of the Joint Stipulation that plaintiff is contending that the ALJ erred in not crediting the assessments of three of plaintiff's treating physicians, Drs. Hornbeck, Haq, and Rothman, and in not incorporating into her determination of plaintiff's residual functional capacity ("RFC") the lifting limitation to which another of plaintiff's treating physicians, Dr. Gaal, had opined. (See Jt Stip at 4-9.)

4

The law is well established in this Circuit that a treating physician's opinions are entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996); Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991). Where the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. See, e.g., Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).[2]

Here, the opinions of plaintiff's treating physicians that plaintiff contends the ALJ erred in failing to credit were controverted by other medical opinions of record, including the opinion of the consultative examiner, Dr. Wu, whose opinion regarding plaintiff's RFC was even less restrictive than the opinion of the state agency

---

[2] To the extent that the Commissioner appears to be questioning this "judicially created standard" (see Jt Stip at 10), the court notes that until such time as either a Ninth Circuit en banc panel or the United States Supreme Court rejects the Ninth Circuit's "treating physician rule," this Court is compelled to follow it.

physicians adopted by the ALJ.[3]

As to Dr. Hornbeck's July 27, 2004 opinion that plaintiff was precluded from bending, climbing, driving, heavy machinery work, pushing/pulling, squatting, repetitive standing for more than 30 minutes per hour per a 4 hour day, repetitive walking for more than 30 minutes per hour per a 4 hour day, and lifting over 1/2 pound (see AR 395), the Court notes that the ALJ did recapitulate this opinion in her summary of the medical evidence of record. (See AR 18.) Although the ALJ did not purport to specifically provide any reasons for rejecting Dr. Hornbeck's opinion, the Court finds that this was not error on the part of the ALJ because the restrictions imposed by Dr. Hornbeck were only for the period July 28, 2004 through August 2, 2004, which was consistent with the following notation in the "History/Subjective Complaints" section of Dr. Hornbeck's Supplemental Report: "Wants 3 days off." (See AR 394-95.) Thus, Dr. Hornbeck's July 27, 2004 opinion was not probative of whether plaintiff suffered from a physical impairment of disabling severity that had lasted or was expected to last for at least 12 months. See 42 U.S.C. § 423(d)(1)(A) (in order to establish disability, the impairment must be expected to result in death or last for a continuous period of not less than 12 months); see also Howard ex rel.

---

[3] As the Commissioner points out, since Dr. Wu's opinion was based on his own independent clinical findings, Dr. Wu's opinion qualified as substantial evidence upon which the ALJ could properly rely. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion based on his own independent physical examination of the claimant constitutes substantial evidence on which the ALJ properly could rely); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict."); Magallanes, 881 F.2d at 751; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (the ALJ need only discuss evidence that is significant and probative).

As to Dr. Haq's statements in his February 26, 2003 Workers' Compensation report to the effect that plaintiff was off work, was totally and completely disabled, and could never return to work (see AR 656-67), the Court notes that the ALJ did address such "opinions" by plaintiff's Workers' Compensation doctors in her decision (see AR 26-27):

> *An Administrative Law Judge does not need to accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by the clinical findings. An Administrative Law Judge is not bound by a conclusory statement that the claimant is "off work" or "disabled" or "temporarily totally disabled", or similar phrases used to describe a person's Workers' Compensation status, because a determination of "disability" for Social Security and Supplemental Security Income benefits is a legal determination that must be made under the Social Security laws and regulations. Sections 20 CFR 404.1527(e) and 416.927(e) state that a statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled. We are responsible for making the decision about whether you meet the statutory definition of disability. The final responsibility for determining whether you are disabled is reserved to the Commissioner of Social Security. Further, 20 CFR 404.1504 and 416.904 state that a decision by any nongovernmental agency or other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by a Worker's [sic] Compensation*

*doctor that the claimant is disabled under the provisions of the Workers' Compensation law is not a binding Social Security disability determination.*

*The undersigned has considered and rejected such conclusory statements and the Workers' Compensation terminology of "off work" or "temporary disability" etc., as not consistent with the medical records, and not binding on a Social Security disability determination. An "off work" or "temporary disability" finding is a Workers' Compensation legal finding and not a binding legal finding for Social Security benefits. Social Security must consider the Workers' Compensation terms, but Social Security is not bound by any Workers' Compensation determination of disability of non-disability. Such terms are not residual functional capacity assessments, but merely a conclusion of a person's status for Workers' Compensation purposes. Such a finding does not provide the necessary information or evaluation required in connection with benefits under Social Security.*

*Also, the timing of a finding of temporary total disability by an advocate Workers' Compensation doctor is not binding on Social Security as to when disability starts or ends under the Social Security laws and regulations. A finding of disability under the Social Security laws and regulations requires a consideration of the totality of the evidence, a well supported assessment of the claimant's residual functional capacity, and a consideration of the claimant's past relevant jobs within the past 15 years, and not simply the job that the claimant was performing when the application for Workers' Compensation was filed. Thus, the evaluation of disability is different under both systems, and a finding of disability is reserved for the Commissioner and is not directed by an advocate Workers' Compensation doctor by merely*

*stating that a claimant is "off work" or "temporarily totally disabled."*

The Court concurs with the ALJ that conclusory statements like those made by Dr. Haq in his February 26, 2003 Workers' Compensation report are not probative of whether a claimant is disabled from engaging in any substantial gainful activity or probative of a claimant's functional limitations. This is evidenced by Dr. Haq's subsequent February 4, 2004 Workers' Compensation assessment, which like the Commissioner, the Court does not construe as an opinion that plaintiff was incapable of working eight hours a day. Rather, the Court construes Dr. Haq's February 4, 2004 assessment as confirmation of the referenced orthopedic surgeon's opinion that plaintiff "may work for eight hours, sitting, standing, and walking six hours per day, and lifting four hours up to 20 pounds," except that Dr. Haq added a bending and twisting limitation to 30 minutes an hour, eight hours a day, and restrictions from driving a postal vehicle and mail carrying with a satchel. (See AR 344-45.)

In her decision, the ALJ specifically addressed Dr. Rothman's various opinions (see AR 27-28):

> *In July 2000, Dr. Rothman said that the claimant can work with lifting over 10 pounds, with standing and walking predominantly, no mail delivery and no driving. In September 2001, he released the claimant without restriction. However, Dr. Rothman has also given total disability statements covering the same period of time. None of the doctor's statements are accompanied by a well-supported medical evaluation and they appear to be a recitation of the claimant's subjective complaints. The record does not show a change in the claimant's condition to support such changing and inconsistent assessments from that doctor.*
>
> *I do not give weight to an unsupported assessment that merely parrots the claimant's wishes, that is inconsistent with the assessments*

9

> *of the other doctors for the period in question and that is not supported by the objective medical record.*

The Court therefore finds that the ALJ did provide specific and legitimate reasons supported by substantial evidence in the record for not crediting Dr. Rothman's various opinions that plaintiff was temporarily totally disabled and/or totally disabled from any kind of work. See, e.g., Valentine v. Comm'r of Social Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that contradiction between a treating physician's opinion and his treatment notes constitutes a specific and legitimate reason for rejecting the treating physician's opinion); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that contradiction between treating physician's assessment and clinical notes justifies rejection of assessment); Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, . . . or by objective medical findings"); Thomas, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); Tonapetyan, 242 F.3d at 1149 ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings."); Morgan, 169 F.3d at 602 (holding that a treating or examining physician's opinion based on the plaintiff's own complaints may be disregarded if the plaintiff's complaints have been properly discounted); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (ALJ may legitimately accord less weight to, or reject, the opinion of a doctor based on the self reporting of an unreliable claimant where that claimant's complaints have been properly discounted); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that an ALJ may reject check-off forms that do not contain an explanation of the bases for their conclusions); Johnson, 60 F.3d at 1433

(holding that contradiction between doctor's treatment notes and finding of disability was valid reason to reject treating physician's opinion).

Finally, the Court finds that the ALJ did provide specific and legitimate reasons for not incorporating into her determination of plaintiff's RFC the lifting limitation to which Dr. Gaal had opined. After referencing that lifting limitation by Dr. Gaal, the ALJ noted that plaintiff had told the doctor he could lift up to 25 pounds occasionally; that Dr. Mack, an orthopedic surgeon, had opined in December 2003 that plaintiff could lift up to 20 pounds for 4 hours a day; and that plaintiff's Workers' Compensation doctor (Dr. Haq) likewise had found that plaintiff could "lift no more than 20 pounds for 4 hours per day." (See AR 27.)

## C. Reversal is not warranted based on the ALJ's alleged error in finding that plaintiff did not suffer from a severe mental impairment (Disputed Issue No. 3).

A psychiatric impairment may be found "not severe" at Step Two of the Commissioner's sequential evaluation process only where the impairment "has no more than a minimal effect" on the claimant's mental ability to perform basic work activities. See 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic mental work activities include understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521(b), 416.921(b); Social Security Ruling[4] ("SSR") 85-28. If a finding of non-severity is not "clearly established by medical evidence," adjudication must continue through the sequential evaluation process. See SSR 96-3p; see also Yuckert v. Bowen, 841 F.2d 303, 306-07 (9th Cir. 1988); McDonald v. Secretary of Heath &

---

[4] Social Security Rulings are binding on ALJs. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

Human Svcs., 795 F.2d 1118, 1124-25 (1st Cir. 1986).

Plaintiff contends that, in finding that plaintiff did not suffer from a severe mental impairment, the ALJ erred in rejecting the "uncontroverted" mental limitations imposed by plaintiff's treating psychiatrist, Dr. Ajang, and a state agency review physician. (See Jt Stip at 18-22.)

As to Dr. Ajang, plaintiff has mischaracterized the statements made by the ALJ for why he was not giving weight to the state agency review physician's assessment (which was based solely on Dr. Ajang's assessment), and ignored all of the ALJ's other stated reasons for why he was not giving weight to Dr. Ajang's assessment. Plaintiff was claiming an alleged disabling mental illness over the 10-year period since his alleged onset date of June 1, 1999. The Court construes the ALJ's decision as containing the following reasons for rejecting Dr. Ajang's November 5, 2007 disability assessment (see AR 28-29):

1. The longitudinal medical records did not show that plaintiff had complained of ongoing psychiatric or cognitive problems secondary to mental illness, pain, or medication side effects, prior to plaintiff seeking treatment from Dr. Ajang for 5 months in 2007 for frustration with his life and with his son and father.

2. The mental status examination by Dr. Ajang in June 2007 before any treatment or use of psychiatric medication was almost entirely normal, and Dr. Ajang assigned plaintiff a Global Assessment of Functioning ("GAF") score of 68-75 presently and for the prior year.[5]

---

[5] The GAF range for "absent or minimal symptoms" is 81-90, and the GAF range for "no more than slight impairment in social, occupational, or school functioning" is 71-80. A GAF score in the range of 61-70 is indicative of "[s]ome mild symptoms *(e.g., depressed mood and mild insomnia)* OR some difficulty in social, occupational, or school functioning *(e.g., occasional truancy, or theft within household)*, but generally functioning pretty well, has some meaningful interpersonal

12

3. When Dr. Ajang opined that plaintiff had greater limitations in his November 5, 2007 disability assessment, he did not assign a more restrictive GAF score.

4. Despite plaintiff's extensive subjective allegations, Dr. Ajang noted in his assessment that plaintiff was in contact with reality; had no deficit in his ability to perform activities of daily living such as caring for his personal affairs, shopping, cooking, traveling, paying bills, grooming and hygiene; and had no limitations in concentration or task completion.

5. Dr. Ajang did not state that plaintiff was unable to adapt to work or that he was unable to interact or respond appropriately to all co-workers, supervisors, members of the public or normal work week pressures.

6. Dr. Ajang's assessment was inconsistent with his treatment notes, and specifically his assignment of a 68-75 GAF score.

7. The longitudinal Kaiser records did not show the existence of a severe medically determinable mental impairment.

8. The treatment notes of plaintiff's primary physician, Dr. Schmidt, did not reflect the existence of severe functional mental limitations.

9. Dr. Ajang had only seen plaintiff for 5 months out of the 10-year period under consideration.

10. Dr. Ajang's assessment was inconsistent with his mental status examination findings.

11. The severe functional limitations assessed by Dr. Ajang had

---

relationships." See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed.).

13

not been demonstrated when plaintiff presented to other doctors.

12. Dr. Ajang appeared to be relying solely on plaintiff's self-reports of his functioning and limitations, and the ALJ found plaintiff's statements to not be fully credible.

Under the authorities cited in the preceding section, the Court finds that these reasons provided by the ALJ constitute legally sufficient reasons for not crediting Dr. Ajang's assessment, whether the standard is "specific and legitimate" or "clear and convincing."

The ALJ's rationale for not according weight to the state agency review physician's assessment of plaintiff's mental limitations was that it was based solely on Dr. Ajang's November 5, 2007 assessment, which the ALJ was rejecting for the above-stated reasons. (See AR 29.) It follows from the Court's finding that the ALJ did not err in his rejection of Dr. Ajang's November 5, 2007 assessment that the ALJ also did not err in his rejection of the state agency review physician's assessment of plaintiff's mental limitations.

**D. Reversal is not warranted based on the ALJ allegedly being "disingenuous in her representation of her non-verbal communication at the hearing" (Disputed Issue No. 3).**

In an administrative hearing, a party alleging bias must overcome a presumption of honesty and integrity. See Withrow v. Larkin, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975); see also Schweiker v. McClure, 456 U.S. 188, 195-96, 102 S. Ct. 1665, 72 L. Ed. 2d 1 (1982). Here, the Court finds that plaintiff has failed to meet his burden of overcoming this presumption. See Rollins v. Massanari, 261 F.3d 853, 858 (9th Cir. 2001) ("'[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what

imperfect men and women ... sometimes display' do not establish bias.").

Moreover, to the extent that plaintiff implicitly has conceded this point in his reply to the Commissioner's contentions (see Jt Stip at 29) and is relegated to arguing that the ALJ was "unethical" in mischaracterizing in her decision her conduct at the hearing, the Court notes that the district court's jurisdiction and the applicable standard of review in individual social security cases is set forth in 42 U.S.C. § 405(g).  That statute provides that in individual review cases, district courts have jurisdiction to review the Commissioner's denial of benefits, and that in such cases the district court's fact-finding role is limited to affirming the Commissioner's findings if supported by substantial evidence.  Here, since plaintiff failed to raise the issue of the ALJ's allegedly inappropriate behavior at the administrative hearing and/or allegedly unethical mischaracterization of her conduct at the hearing in his request for review (see AR 131) or in his accompanying letter to the Appeals Council Brief detailing the ALJ's alleged errors (see AR 132-33), the Appeals Council's denial of plaintiff's request for review and its adoption of the ALJ's decision as the Commissioner's final decision in the case cannot reasonably be construed as encompassing a finding that the ALJ did not engage in inappropriate behavior at the administrative hearing and/or was not unethical in her characterization of her conduct.  The Court therefore concludes that its fact-finding jurisdiction does not extend to making any factual findings on those issues.

*******************

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: July 18, 2011

*[signature]*

ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE